IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| EEI HOLDING CORPORATION d/b/a ) | | |
| EGIZII ELECTRIC, INC., ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | No. 12-3276 | |
| ) | | |
| GARY L. BRAGG, EDMOND VILLANI, ) | | |
| KEN BRIER, NICHOLAS BRATT, ) | | |
| JOEL COOPERMAN, MARKUS ) | | |
| ROHRBASSER, and TED DRAUSCHAK, ) | | |
| ) | | |
| Defendants. ) | | |

**OPINION**

RICHARD MILLS, U.S. District Judge:

This matter is now before the Court on Defendants' Motion to Dismiss [d/e 6] for lack of personal jurisdiction and failure to state a claim.  For the reasons that follow, Defendants' Motion to Dismiss is DENIED on the issue of personal jurisdiction, but GRANTED on the issue of failure to state a claim.

**I. FACTUAL BACKGROUND**

Plaintiff, EEI Holding Corporation ("Plaintiff"), is an Illinois corporation with its principal place of business in Springfield, Illinois.  *Complaint* [d/e 1-1] ¶ 1.  First Sealord Surety, Inc. ("First Sealord") is a Pennsylvania corporation with its principal place of business in Pennsylvania.  *Id*. at 5.

1

At all times relevant to this action, the following individually-named Defendants were corporate actors of First Sealord: (1) corporate secretary, Gary L. Bragg; (2) corporate officers and/or directors, Edmond Villani and Ken Brier; and (3) corporate directors, Nicholas Bratt, Joel Cooperman, Markus Rohrbasser, and Ted Drauschak ("Defendants").  *See id.* at ¶¶ 2-4.

On September 24, 2010, Plaintiff purchased two surety bonds from First Sealord and secured them with $225,000, which First Sealord held in trust.  *See id*. at ¶¶ 8-10.  On April 29, 2011, the collateral funds were transferred into First Sealord's operating account, and ultimately depleted, allegedly at the direction of Defendants.  *See id.* at ¶¶ 12, 17.  This conversion, however, was not discovered until the Commonwealth Court of Pennsylvania[1] ordered First Sealord into liquidation in February 2012.  *Id*. at ¶¶ 11-12.

The Pennsylvania Insurance Commissioner, acting as a statutory liquidator[2] ("liquidator"), is pursuing recoupment of Plaintiff's collateral funds from the Defendants' directors and officers' liability insurance ("D&O insurance").[3]  *See id*. at ¶ 19.  Plaintiff has filed a claim with the liquidator seeking to recover any

---

[1] The Commonwealth Court of Pennsylvania is one of two intermediate appellate courts in Pennsylvania and adjudicates both original civil actions and appellate cases involving state and local governments and regulatory agencies.  The Unified Judicial System of Pennsylvania, *Commonwealth Court Overview*, http://www.pacourts.us/learn/ (last visited May 8, 2013).

[2] Upon an order to liquidate an insolvent insurance company, the Insurance Commissioner is appointed as a liquidator to administer the assets of the insurer's estate.  *See* 40 P.S. § 221.20.

[3] Directors and officers' liability insurance is "[a]n agreement to indemnify corporate directors and officers against judgments, settlements, and fines arising from negligence suits, shareholder actions, and other business-related suits."  *Black's Law Dictionary* 872 (9th ed. 2009).

2

corresponding D&O insurance proceeds. *See id.* The liquidator, however, has allegedly expressed his intent to treat any such proceeds as an asset of First Sealord by depositing the funds into First Sealord's general estate for disbursement to creditors. *See id.* Plaintiff has elected to directly pursue recoupment of its converted collateral funds from Defendants.

## II. PROCEDURAL BACKGROUND

Plaintiff filed this action on June 29, 2012, in the Circuit Court of Sangamon County, Illinois, No. 2012 L 000172. *See Complaint* [d/e 1-1]. On October 9, 2012, Defendants removed the case to this Court based on diversity of citizenship. *Notice of Removal* [d/e 1].

In its Complaint, Plaintiff claims that it is entitled to bring this direct action against Defendants for allegedly directing the conversion of its collateral funds, thereby breaching a fiduciary duty owed to Plaintiff and causing damages in the amount of $225,000. *See Complaint* [d/e 1-1] ¶¶ 17-20.

On November 19, 2012, Defendants moved the Court to dismiss the action for lack of personal jurisdiction and for failure to state a claim. *Motion* [d/e 6].

## III. ANALYSIS

Defendants argue that due process does not permit the Court to exercise personal jurisdiction. *See Defs.' Mem.* [d/e 7] pp. 5-8. Defendants further argue

3

that they did not owe Plaintiff a fiduciary duty, and thus, Plaintiff has failed to state a claim upon which relief can be granted. *See id.* at pp. 8-9.

**A. Direct Claims against Directors and Officers Individually**

For a corporate creditor to bring a direct cause of action against the corporation's directors or officers, it must show that it has suffered an injury that is distinct from any injury to corporate assets. *See University of Maryland v. Peat Marwick Main & Co.,* 923 F.2d 265, 273-274 (3d Cir. 1991) (distinguishing between a claim that is personal to an individual shareholder and one that is derivative of the insolvent insurer's loss); *see also In re Bane*, 426 B.R. 152, 157-158 (Bankr. W.D. Pa. 2010) (extending the shareholder standing rules to a creditor of an insolvent corporation).

Corporate directors and officers can be sued in their individual capacities, under the participation theory of liability, for tortious acts of the corporation that they specifically direct or in which they personally participate or cooperate. *See Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 232 (E.D. Pa. 2012) (applying Pennsylvania law) (citing *Donsco, Inc. v. Casper Corp.,* 587 F.2d 602, 606 (3d Cir. 1978) and 3A Fletcher, *Cyclopedia of the Law of Private Corporations,* § 1137, p. 207 (perm. ed. rev. 1975)). Such acts may also render the corporation vicariously liable, but that does not relieve the individual of personal liability. *Donsco*, 587 F.2d at 606.

It appears that Plaintiff's collateral funds were not an asset of First Sealord. *See Exhibits* [d/e 1-1] pp. 5-7; *see also* 40 Pa. Stat. § 221.23a(a). Therefore, the conversion of Plaintiff's collateral funds was not an injury to corporate assets, but rather, an injury to Plaintiff personally. For that reason, Plaintiff has a direct cause of action against the individual Defendants that allegedly directed the conversion of Plaintiff's collateral funds.

**B. Defendants are Subject to Personal Jurisdiction**

Upon a motion to dismiss for lack of personal jurisdiction, a plaintiff must show that the Court has jurisdiction over each defendant. *Nelson v. Park Indus., Inc.,* 717 F.2d 1120 (7th Cir. 1983). When the decision on such a motion is based on written materials, the plaintiff need only make a *prima facie* showing to avoid dismissal. *Id.* at 1123. Accordingly, the plaintiff's factual allegations are accepted as true, unless controverted by a defendant's affidavit. *Swanson v. City of Hammond*, 411 F. App'x 913, 915 (7th Cir. 2011). Factual disputes are resolved in plaintiff's favor. *Nelson*, 717 F.2d at 1123.

Defendants contend that they lack "minimum contacts" with the State of Illinois sufficient to justify the Court's exercise of personal jurisdiction. *See Defs.' Mem.* [d/e 7] p. 6. In support of their position, Defendants point out that none of them: (1) have conducted business on behalf of First Sealord in Illinois; (2) own

5

property in Illinois; (3) pay income or property taxes in Illinois; (4) hold bank accounts in Illinois; or (5) maintain an office or telephone number in Illinois. *Id.*

Notwithstanding the apparent deficiency of traditional contacts with the State of Illinois, Plaintiff contends that Defendants are, nonetheless, properly before the Court, arguing that an allegation of tortious conduct—purposely directed at and felt in the State of Illinois—suffices to satisfy the minimum requirements of due process. *See Response* [d/e 11] pp. 5-6. The Court agrees.

In a diversity case, a federal court may only assert personal jurisdiction over a non-resident defendant if "a court of the state in which it sits would have such jurisdiction." *Turnock v. Cope,* 816 F.2d 332, 334 (7th Cir. 1987). Traditionally, there were three individual limitations to a state's exercise of personal jurisdiction: (1) state statutory law, (2) state due process, and (3) federal due process.

However, as noted in *Obermeyer v. Gilliland,* 873 F.Supp. 153, 156 (C.D. Ill. 1995) (Mills, J.), the Illinois Long-Arm Statute, 735 ILCS 5/2-209, makes Illinois law coextensive with minimum due process requirements, thereby narrowing the analysis of personal jurisdiction to the limitations imposed by the Illinois and United States Constitutions. To that end, the Illinois courts have failed to expound any "operative difference" between the respective constitutional limits. *Hyatt Intern. Corp. v. Coco,* 302 F.3d 707, 715 (7th Cir. 2002). Therefore, the analysis has coalesced into a single inquiry—federal due process.

To exercise personal jurisdiction over a nonresident, due process requires: (1) the defendant to have established "minimum contacts" with the forum state, and (2) the assertion of jurisdiction to comport with "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 105 (1987); *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

Two types of personal jurisdiction exist—specific and general. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 (1984). Specific jurisdiction applies when the defendant's forum contacts give rise to the cause of action, even if those contacts are very limited. *Id*. at 414. General jurisdiction, on the other hand, applies when the defendant's forum contacts do not give rise to the cause of action, but is nevertheless "continuous and systematic." *See id.* at 416.

Plaintiff argues that Defendants are within the Court's specific jurisdiction. *See Response* [d/e 11] p. 4. The inquiry is therefore limited to whether Plaintiff's claim "arise[s] out of or relate[s] to" Defendants' contacts with the State of Illinois. *Helicopteros*, 466 U.S. at 414.

In sum, the propriety of asserting specific jurisdiction over Defendants is predicated on satisfaction of the following three requirements: (1) Defendants must have had "minimum contacts" with the State of Illinois; (2) Plaintiff's injury must "arise out of or relate to" those contacts; and (3) the exercise of jurisdiction must comport with "traditional notions of fair play and substantial justice."

Because the onus is on Plaintiff to establish jurisdiction, it bears the burden of a prima facie showing as to the first two requirements. *See Nelson*, 717 F.2d at 1123. If Plaintiff carries its burden, the onus shifts to Defendants to defeat the final requirement, and thus avoid jurisdiction, by presenting a "compelling case" that the exercise thereof would be unreasonable. *See Burger King Corp v. Rudzewicz,* 471 U.S. 462, 477 (1985).

**(1) Conduct Purposely Directed at the Forum Satisfies Minimum Contacts**

Minimum contacts have been defined as "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). The concept of purposeful availment, which is central to the minimum contacts analysis, ensures that a defendant's "conduct and connection with the forum state are such that he should reasonably anticipate being hailed into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). The minimum contacts requirement is therefore intended to afford a potential defendant some level of foreseeability as to the jurisdictional consequences of its conduct.

Purposeful availment, however, does not suffice to confer jurisdiction in every instance where it is nonetheless warranted. In the case of interstate tortious conduct that is directed at and felt in a particular state, the tortfeasor may not have

availed itself of that state's laws, but its amenability to suit therein would be no less foreseeable. *See Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012).

For that reason, the Seventh Circuit has repeatedly held, pursuant to the "effects test,"[4] that tortious conduct "purposefully directed" at the State of Illinois sufficiently satisfies the minimum contacts requirement of due process, as a tortfeasor should anticipate answering for its wrongs in "the state in which the injury (and therefore the tort) occurs." *See Tamburo v. Dworkin,* 601 F.3d 693, 702 (7th Cir. 2010); *Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1202 (7th Cir. 1997).

To establish that conduct was "purposefully directed," Plaintiff must show that an intentional act was expressly aimed at the State of Illinois with knowledge that injury would be felt therein. *Tamburo,* 601 F.3d at 703; *Calder*, 465 U.S. at 789-90. Plaintiff alleges that Defendants intentionally directed the conversion of its collateral funds, thereby breaching a fiduciary duty. *See Complaint* [d/e 1-1] ¶¶ 13, 17-18. Plaintiff further alleges that First Sealord was licensed to do business in Illinois and did so through the actions of Defendants. *Id*. at ¶ 6. Thus, Defendants knew at the time of their allegedly-tortious conduct that Plaintiff was an Illinois-based business and, therefore, also knew that any injury would be felt in Illinois.

---

[4] The "effects," or "purposeful direction," test is based on *Calder v. Jones,* 465 U.S. 783 (1984) (minimum contact was satisfied because defendants allegedly engaged in tortious conduct in Florida with knowledge that the "effects" thereof would be felt in California).

9

By acting in spite of that information, Defendants "purposefully directed" allegedly-tortious conduct at the State of Illinois; thus, establishing minimum contacts. *See Janmark*, 132 F.3d at 1202-1203; *see also Digital Merch. Sys., Inc. v. Oglesby,* No. 98-8033, 1999 WL 1101769, at *3 (N.D. Ill. Nov. 30, 1999) (defendants' knowledge that they were dealing with an Illinois business at time of alleged tortious conduct satisfied minimum contacts).

### (2) Plaintiff's Injury "Arises Out Of" Defendants' Minimum Contacts

Specific jurisdiction requires a plaintiff's injury to "arise out of or relate to" the conduct that established minimum contacts. *See Burger King,* 471 U.S. at 472. The Supreme Court is yet to elaborate on this requirement, and the Seventh Circuit has declined to take a definitive analytical position. *Tamburo*, 601 F.3d at 708. Moreover, "the circuits disagree about whether the defendant's contacts must have been the *factual* cause of the plaintiff's injury, the factual *and* proximate cause, or perhaps some intermediate standard between the two." *Id*. at 708-709.

This dispute, however, does not give the Court pause, as the requirement is satisfied under even the most rigorous standard. The Court already concluded that the allegations, if true, would constitute an intentional tort that was purposely directed at the State of Illinois for the purpose of causing injury herein. That contact with Illinois was both the "cause in fact and the legal cause" of Plaintiff's

injury. *See Tamburo*, 601 F.3d at 709; *see also Felland*, 682 F.3d at 677. As such, Plaintiff's claim directly arises out of Defendants' contact with the State of Illinois.

Plaintiff has therefore made a prima facie showing as to specific jurisdiction and thus, shifted the burden to Defendants.

**(3) Traditional Notions of Fair Play and Substantial Justice are Not Offended**

Defendants, having purposely directed their conduct at the State of Illinois, can only defeat jurisdiction by presenting a "compelling case" that the exercise of jurisdiction would be unreasonable. *Burger King*, 471 U.S. at 477. That is, Defendants must show that "traditional notions of fair play and substantial justice" would be offended. *See id.*; *see also Int'l Shoe*, 326 U.S. at 316.

The following factors inform the reasonableness of exercising jurisdiction: (1) Defendants' burden in defending the suit in Illinois; (2) Illinois' interest in adjudicating the dispute; (3) Plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining an efficient resolution of the controversy; and (5) the several States' interest in furthering fundamental substantive policies. *See Burger King*, 471 U.S. at 477.

Applying these principles, the Court finds it fair and reasonable for this suit to proceed in the Central District of Illinois.

Here, Defendants have failed to show that litigating this dispute in Illinois would impose an undue burden. Their sole argument on point is that they have no

contact with the state. *See Defs.' Mem.* [d/e 7] pp. 7-8. However, as discussed above, Defendants established significant contact when they purposely directed allegedly-tortious conduct at an Illinois business. Defendants, therefore, should have expected, no less anticipated, defending that conduct herein and thus, cannot be heard to complain of the burden they allegedly invited.

Perhaps most importantly, the State of Illinois has a significant interest in adjudicating disputes arising from injuries suffered within its borders. *Coolsavings.Com, Inc. v. IQ. Commerce Corp.,* 53 F.Supp.2d 1000, 1005 (N.D. Ill. 1999). That interest includes providing its residents a forum in which to seek redress for injuries inflicted by non-resident defendants. *Felland*, 682 F.3d at 677. Moreover, proceeding in Illinois will advance substantive social policies that seek to deter tortious behavior.

Defendants point out that Plaintiff has filed a claim with the statutory liquidator. *See Defs.' Mem.* [d/e 7] p. 8. Insofar as Defendants are suggesting that fact favors dismissal, they are effectively suggesting that Plaintiff should be relegated to the liquidator's representation of Plaintiff's interest. Defendants, however, cite no supporting authority, and the same eludes the Court.

To the contrary, as Plaintiff points out in its Response, it is indeed questionable, under Pennsylvania law, whether the liquidator can even represent Plaintiff's interest. *Response* [d/e 11] p. 11. Although a liquidator "may assert

12

injury common to … general creditors," they typically lack standing to assert injury personal to a specific creditor, such as Plaintiff. *See Peat Marwick,* 923 F.2d at 273-274 (reasoning that a claim was beyond the control of the Pennsylvania Insurance Commissioner because it was not derivative of the insolvent insurer's loss, but rather, personal to the plaintiffs). As previously discussed, Plaintiff's collateral was probably not an asset of First Sealord, so the conversion thereof was not likely an injury to the corporation, but rather, an injury to Plaintiff personally. Plaintiff's claim therefore appears to be beyond the representative capacity of the liquidator.

Moreover, even if the liquidator can represent Plaintiff's interest and ultimately receives corresponding insurance proceeds, he has nevertheless allegedly expressed intent to deposit those funds into First Sealord's general estate. *See Complaint* [d/e 1-1] ¶ 19. This would effectively relegate Plaintiff to the status of a general creditor, relinquish Plaintiff's personal claim to First Sealord and convert any corresponding insurance proceeds into an asset of First Sealord's estate. Plaintiff's interest in obtaining convenient and effective relief will therefore be best served by adjudicating this dispute in Illinois.

Under the circumstances, as alleged, the Court finds it perfectly fair and reasonable for it to hale Defendants into Illinois to answer for their alleged deeds. As such, traditional notions of fair play and substantial justice are not offended.

13

Accordingly, the Court concludes that asserting personal jurisdiction over Defendants is consistent with minimum due process requirements.

For the foregoing reasons, Defendants' Motion to Dismiss is DENIED on the issue of personal jurisdiction.

**C. Plaintiff Failed to State a Claim upon which Relief can be Granted**

Dismissal is proper if a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis. *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). This means that: (1) "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests" and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level." *EEOC v. Concentra Health Services, Inc.,* 496 F.3d 773, 776 (7th Cir. 2007).

While detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." *Twombly,* 550 U.S. at 555. Conclusory allegations are "not entitled to be assumed true." *Ashcroft v. Iqbal,* 556 U.S. 662, 664 (2009) (citing *Twombly,* 550 U.S. 544 (2007)). "In ruling on Rule 12(b)(6)

motions, the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir. 2009) (citing *Tamayo*, 526 F.3d at 1081).

In its Complaint, Plaintiff claims that Defendants collectively directed the conversion of its collateral funds, which First Sealord held in trust. *See Complaint* [d/e 1-1] ¶¶ 10, 12, 17-18. Plaintiff further alleges that in so doing, Defendants "breached *their* fiduciary duty to [Plaintiff]." *See id*. at ¶ 18 (emphasis added); *see also id*. at p. 4 ¶ A.

Defendants admit that if First Sealord became insolvent, they would have owed Plaintiff, as a corporate creditor, a fiduciary duty. *See Defs.' Mem.* [d/e 7] p. 9. Defendants point out, however, that Plaintiff failed to plead that First Sealord was insolvent at the time Defendants allegedly directed the conversion of Plaintiff's collateral funds. *See Id.* For that reason, Defendants argue, Plaintiff failed to state a claim upon which relief can be granted. The Court agrees.

Under Pennsylvania law, directors and officers of a solvent corporation only owe a fiduciary duty to that corporation and its shareholders, but if the corporation becomes insolvent, the duty extends to corporate creditors as well. *In re Zambrano Corp.*, 478 BR 670, 684 (Bankr. W.D. Penn. 2012). Pennsylvania law defines insolvency as: "(i) having generally ceased to pay debts in the ordinary course of business other than as a result of bona fide dispute; (ii) being unable to pay debts

15

as they become due; or (iii) being insolvent within the meaning of Federal bankruptcy law." 13 Pa. Cons. Stat. Ann. § 1201(b)(23).

Because the duty to corporate creditors is specifically predicated on the insolvency of the corporation, Plaintiff must have necessarily alleged insolvency to claim that Defendants breached *their* fiduciary duty to Plaintiff. Plaintiff's Complaint did not make an allegation regarding First Sealord's insolvency. *See Complaint* [d/e 1-1]. Plaintiff has therefore failed to state a claim upon which relief can be granted.

### IV. CONCLUSION

*Ergo*, Defendants' Motion to Dismiss [d/e 6] is DENIED on the issue of personal jurisdiction, but GRANTED on the issue of failure to state a claim. Accordingly, Plaintiff's Complaint is dismissed without prejudice. Plaintiff is given leave to file an amended Complaint on or before June 12, 2013.

IT IS SO ORDERED.

ENTER: May 21, 2013

FOR THE COURT:      */s/ Richard Mills*
                    _____
                    RICHARD MILLS
                    United States District Judge